IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ALYSANDE BROWN, )
)
      Plaintiff, )
)
v. ) Civil Action No. 3:17cv703–HEH
)
GLASSER AND GLASSER, P.L.C., )
)
      Defendant. )

## MEMORANDUM OPINION
### (Dismissing Case for Lack of Subject-Matter Jurisdiction)

THIS MATTER is before the Court on its own initiative. Plaintiff Alysande Brown ("Plaintiff") filed a Complaint (ECF No. 1) on October 18, 2017, asserting a cause of action under the Fair Debt Collection Practices Act ("FDCPA").

After reviewing the Complaint, the Court had concerns that a facial reading of the Complaint may not support subject matter jurisdiction and ordered supplemental briefing from Plaintiff on that issue. (ECF No. 3.) On November 6, 2017, Plaintiff filed a Memorandum of Law On Article III Standing ("Memorandum on Standing") that purports to address the concerns identified by the Court. (ECF No. 4)

For the reasons stated herein, the Court finds that it lacks subject-matter jurisdiction and must dismiss Plaintiff's Complaint without prejudice.

## I. BACKGROUND

Defendant Glasser and Glasser PLC ("Defendant") initiated collection activities against Plaintiff on a "debt" within the meaning of 15 U.S.C. § 1692a(5). (Compl. ¶¶

1

8–9.) On October 18, 2017, Defendant sent a collection letter to Plaintiff, which stated in relevant part: "This settlement may have tax consequence. If you are uncertain about the possible tax consequences, please consult your tax adviser." (*Id.* ¶¶ 11–12.)

Plaintiff contends that Defendant's debt collection efforts violated various provisions of the FDCPA. (*Id.* ¶ 21.) As a result of these efforts, Plaintiff summarily alleges that Plaintiff "has been damaged" and "is entitled to damages in accordance with the FDCPA." (*Id.* ¶ 22.) However, the Complaint fails to specify *how* Plaintiff has allegedly been damaged.[1]

## II. LEGAL FRAMEWORK

The Constitution divides power amongst the three branches of our Federal Government. As such, it is well settled that judicial power is limited to the extent that federal courts may exercise jurisdiction only over "cases" and "controversies." U.S. Const. art. III, §2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). Thus, subject-matter jurisdiction requires a justiciable case or controversy within the meaning of Article III of the United States Constitution. *See Allen v. Wright*, 468 U.S. 737, 750–51 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014). Standing constitutes one component of justiciability. *Lujan*, 504 U.S. at 560. Whether a plaintiff has standing presents a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own

---

[1] Plaintiff attempts to bolster the Complaint by elaborating on the alleged harms suffered in the Memorandum on Standing. This is unavailing, as the Court's analysis is confined to the four corners of the Complaint.

initiative, at any stage in the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (internal citation omitted).

The Supreme Court has established that the "irreducible constitutional minimum" of standing includes three elements: (1) an injury-in-fact; (2) a causal connection between the injury and the alleged misconduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–61 (citations and quotation marks omitted). As the party invoking this Court's jurisdiction, Plaintiff bears the burden of establishing all three elements. *Id.* at 561. "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (quoting *Warth*, 422 U.S. at 518).

In *Spokeo*, the Supreme Court reiterated the basic tenets of the standing doctrine. *Id.* at 1547. It noted that to satisfy the injury-in-fact requirement, a plaintiff must show "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'" *Id.* at 1548 (citing *Lujan*, 504 U.S. at 560).

To satisfy the particularization requirement, the plaintiff "must allege a distinct and palpable injury to himself." *Warth*, 422 U.S. at 501 (citations omitted). The injury must "affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. Claims asserting "'generalized grievance[s]' shared in substantially equal measure by all or a large class of citizens . . . normally do[] not warrant exercise of jurisdiction." *Warth*, 422 U.S. at 499 (citations omitted).

3

Standing's concreteness requirement demands that an injury be real, not abstract. *Spokeo*, 136 S. Ct. at 1548. However, it is possible for an intangible harm to be concrete.[2] *Id.* at 1549. When determining whether such intangible harms are sufficiently concrete to satisfy Article III's requirements, Congress' "judgment is . . . instructive and important." *Id.*

In creating statutory rights of action, "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan*, 504 U.S at 578) (alteration in original). However, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* The Supreme Court has made clear that "Article III standing requires a concrete injury *even in the context of a statutory violation.*" *Id.* (emphasis added).

When a plaintiff alleges a statutory violation, she usually must plead an additional injury in order to satisfy the concreteness requirement. Concreteness can certainly be satisfied by alleging a harm—either tangible or intangible—which has already occurred or is continuing to occur. But concreteness can also be satisfied where the plaintiff faces a "risk of real harm" likely to occur in the future. *Id.*

The Supreme Court has noted that in some circumstances, however, merely

---

[2] Examples of these intangible injuries include libel, slander, and violations of the constitutional rights to free speech and free exercise. *See Spokeo*, 136 S. Ct. at 1549 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009); *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993); Restatement (First) of Torts §§ 569, 570).

4

pleading "the violation of a procedural right granted by statute" may be sufficient to satisfy concreteness. *Id.* This occurs in situations where the legislature has codified causes of action with intangible harms where recovery was long permitted at common law. *Id.* (citing Restatement (First) of Torts §§ 569 (libel), 570 (slander *per se* ) (1938); *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998) (access to public information); *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989) (access to public information)). "[A] plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.*

However, absent this narrow exception where Congress has codified a common law intangible injury, standing only exists for a statutory violation where the plaintiff has also alleged an additional concrete harm.[3] For example, the Supreme Court noted in *Spokeo* that a consumer reporting agency may fail to provide the statutorily required notice to the user of consumer information, even if that information is entirely accurate. *Id.* at 1550. Or, the agency might provide some wholly inaccurate, yet benign, information, such as an incorrect zip code. *Id.* While both of these situations constitute statutory violations, the "victim" has no standing because the conduct does not "cause harm or present any material risk of harm." *Id.*

It is with these principles in mind that the Court conducts its analysis.

### III. ANALYSIS

Plaintiff's Complaint alleges that Defendant violated various provisions of the

---

[3] Though the Supreme Court in *Spokeo* highlighted this requirement specifically within the context of the FCRA, its analysis was not limited to causes of action arising under that Act. The Court finds that the Supreme Court's reasoning is readily applicable to cases alleging violations of the FDCPA as well.

FDCPA through its debt collection efforts that consisted of sending a collection letter referencing potential tax consequences. (*See generally* Compl.) Plaintiff, however, does not identify any tangible harm suffered as a result of these alleged violations. Consequently, the Complaint fails to plead that Plaintiff suffered a sufficiently "concrete and particularized" harm that is "actual and imminent, not conjectural or hypothetical" to confer Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Without such an allegation, the next step in the Court's inquiry is to determine whether Plaintiff has sufficiently pleaded the "risk of real harm" that is likely to occur in the future. *Spokeo*, 136 S.Ct. at 1549. The Fourth Circuit's recent decision in *Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017) is instructive.

In *Beck*, the court consolidated two cases involving data breaches at the Dorn Veterans Affairs Medical Center ("Dorn VAMC") in Columbia, South Carolina. *Id.* at 267–68. The plaintiffs alleged that both data breaches constituted violations of the Privacy Act. *Id.* at 266–68. However, they did not "allege that Dorn VAMC's violations of the Privacy Act alone constitute[d] an Article III injury-in-fact." *Id.* at 271 n.4. Rather, the plaintiffs asserted that they suffered a concrete injury from the future risk of identity theft. *Id.* at 266–67. The Fourth Circuit found that the plaintiffs' speculative allegations were "insufficient to establish a 'substantial risk' of harm" necessary to show concrete injury. *Id.* at 275. Consequently, it held that plaintiffs' abstract claim of harm was inadequate to confer standing. *Id.* at 276–77.

In the present case, the Complaint simply states that "Plaintiff has been damaged." (Compl. ¶¶ 19, 22.) The Court finds that the facts alleged do not give rise to a reasonable

6

inference that there is an impending risk of actual harm.[4] As such, Plaintiff cannot claim standing due to the "real risk of harm."

Lastly, the Court must determine whether the statutory provisions that Plaintiff alleges Defendant violated are the type where Congress has codified causes of action with intangible harms where recovery was long permitted at common law. *See Spokeo*, 136 S. Ct. at 1549. "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* Therefore, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* Here, Plaintiff does not suggest a "common law analogue" to the harm alleged, and there does not appear to be a "traditional right of action in common law that is comparable." *Dreher v. Experian Info. Sol., Inc.*, 856 F.3d 337, 345 (4th Cir. 2017).

The Fourth Circuit's recent decision in *Dreher* provides useful guidance. In *Dreher*, the plaintiff was associated with a delinquent credit card account listed on his credit report under the name of "Advanta." *Id.* at 340. Unbeknownst to the plaintiff, another entity, CardWorks, had acquired Advanta and decided to continue servicing Advanta's accounts using Advanta's name. *Id.* at 341. As a result of CardWorks' failure

---

[4] The Court recognizes that some courts, including two in this District, have found that alleged violations of the FDCPA can indeed create a risk of real harm for a plaintiff because certain debt collection practices can "detrimentally affect[] [a] debtor's decisions regarding his debt." *Biber v. Pioneer Credit Recovery, Inc.*, 229 F. Supp. 3d 457, 465 (E.D. Va. 2017) (collecting cases); *see also Brown v. R&B Corp. of Va.*, No. 2:17cv107(MSD), 2017 WL 3224728, at *16–19 (E.D. Va. July 28, 2017) (citing *Biber*). However, the Complaint contains no allegations that Defendant's alleged conduct impacted Plaintiff's decisions about the underlying debt in any way. Accordingly, the Court does not follow the courts in *Biber* and *Brown*, and it cannot find that Plaintiffs' allegations satisfy Article III standing.

7

to use its own name when reporting the Advanta accounts, the plaintiff alleged that "he suffered a cognizable 'informational injury' because he was denied 'specific information' to which [he was] entitled under the FCRA." *Id.* at 345.

After determining that there was no common law analogue to Dreher's alleged FCRA violation, the Fourth Circuit suggested that he may have nonetheless suffered a concrete injury if "he [was] denied access to information required to be disclosed by statute, *and* he 'suffer[ed], by being denied access to that information, the type of harm *Congress sought to prevent* by requiring disclosure.'" *Id.* (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)). The court concluded, however, that the harm which Dreher allegedly suffered was not the type which Congress sought to prevent in enacting the FCRA. *Id.* at 346.

Similarly in this case, Plaintiff only makes the bare allegation that "Plaintiff has been damaged" by Defendant's actions. (Compl. ¶¶ 19, 22.) But the Complaint fails to indicate that Plaintiff suffered "the type of harm Congress sought to prevent by" enacting the FDCPA. *Dreher*, 856 F.3d at 345. In fact, the Complaint fails to identify what Plaintiff's harm is at all.[5] Therefore, the Court must conclude that Plaintiff's injury is not an intangible harm sufficient to confer standing under either *Spokeo* or *Dreher*.

---

[5] To the extent the Complaint can be construed to suggest that every bare violation of the FDCPA constitutes a sufficient injury-in-fact to support Article III standing, the Court disagrees. While at least one court in this District has found that in a FDCPA case the injury-in-fact suffered is "being subjected to the allegedly 'unfair and abusive practices,' of the Collection Defendants," that court also noted that the Fourth Circuit has not yet addressed the issue. *Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 827 (E.D. Va. 2015). This Court declines to make such an extension at this time.

## IV. CONCLUSION

In conclusion, Plaintiff's mere allegation that Defendant's debt collection practices violated the FDCPA is insufficient to confer constitutional standing because Plaintiff failed to plead a risk of harm and did not "identify either a common law analogue or a harm Congress sought to prevent." *Dreher*, 856 F.3d at 346. Plaintiff is thus "left with a statutory violation divorced from any real world effect." *Id.* This does not mean that Plaintiff could never have standing to bring an action to recover for the alleged FDCPA violations.[6] But Plaintiff must plead a concrete harm in order to satisfy the injury-in-fact requirement of Article III.

Therefore, the Court will dismiss Plaintiff's Complaint (ECF. No. 1) without prejudice.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Nov. 9, 2017
Richmond, Virginia

---

[6] While the Court has concerns that the facts alleged do not state a claim upon which relief can be granted, such a determination is inappropriate at this stage.

9